UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY J. KIPLING,<br><br>          Plaintiff,<br><br>v.<br><br>CARRINGTON MORTGAGE SERVICES, LLC; EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC; TRANS UNION LLC; and DOES 1 through 10, inclusive;<br><br>          Defendants. | Case No.: 20cv1340 JM(MSB)<br><br>**ORDER ON MOTION TO DISMISS** |

Presently before the court is a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) filed by Defendant Carrington Mortgage Services, LLC ("Carrington"). (Doc No. 7.) The motion has been fully briefed and the court finds it suitable for submission on the papers and without oral argument in accordance with Civil Local Rule 7.1(d)(1). For the reasons set forth below, the motion is granted.

**I. Background.**

On July 16, 2020, Plaintiff filed this lawsuit asserting violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. section 1681, *et seq.*; violations of the California Consumer Credit Reporting Agencies Act ("CCRAA"), California Civil Code section

1785.1, *et seq*.; negligent acts and failure to comply with the Real Estate Settlement Procedures Act ("RESPA"); and violations of the California Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act"). (Doc. No. 1, "Compl.".)

The complaint alleges that beginning in or around June 2014, Carrington began servicing the mortgage loan encumbering Plaintiff's residence at 1248 Pershing Road, Chula Vista, CA 91923, (the "Property"). (*Id.* ¶¶ 11, 12.) It is also alleged that from April 2014 through March 2020, Plaintiff consistently paid a total of $2,700 in monthly payments directly to Carrington, even though the actual payment was approximately $2,629.35. (*Id.* ¶¶ 13, 14.) The complaint acknowledges that in June 2019 and August 2019 Plaintiff failed to make his monthly payments, (*id.* ¶ 15) but maintains "at most two payments of $2,629.35 were not made," (*id*. at ¶ 16).

Further, it is alleged that Carrington incorrectly claimed Plaintiff had failed to make ten payments from June 2019. (*Id.* ¶¶ 17-18.) In February 2020, Plaintiff allegedly sent Carrington a detailed letter requesting an explanation of this erroneous accounting and is still awaiting a response. (*Id.* ¶ 19.)

The complaint claims that Plaintiff's March 2020 mortgage payment was rejected by Carrington, with Defendant "demanding a larger payment." (*Id.* ¶ 20.) It is also alleged that Plaintiff's April 2020 mortgage statement inaccurately reflected a past due amount of $32, 025.14 and that the statement did not properly credit many months that Plaintiff had paid Carrington. (*Id.* ¶¶ 21, 22.) As a result, it is alleged:

> [d]espite Plaintiff making his payments in full and on time, Carrington failed to properly credit the Account. Carrington continues to report inaccurate past due balance and late payments on the Account regarding Plaintiff to each EXPERIAN, EQUIFAX, and TRANS UNION ("the CRAs").

(*Id.* ¶ 23.)

Further, it is asserted that, because of the information Carrington reported to them, the CRA's incorrectly displayed information regarding the mortgage account and made it appear to have a past due balance of over $26,000 and late payments of over 120 to 180 days past due beginning in February 2020. (*Id*. ¶ 24.)

Plaintiff contends that he wrote to the CRAs and Carrington to dispute the false and misleading information but no investigations into the purported discrepancies has occurred. (*Id.* ¶¶ 26, 28.) Plaintiff also maintains that on April 27, 2020, he sent Carrington a Qualified Written Request ("QWR") asking for information on the account and "to correct the errors it had made," but that no action has been taken by Carrington in response. (*Id.* ¶ 27.)

Relatedly, it is alleged that because of the professed missed payments, Carrington began a "campaign of collection calls" in January 2020. (*Id.* ¶¶ 31, 32.) Although Plaintiff allegedly requested the calls to stop, the amount and frequency has risen "to the level of harassment." (*Id.* ¶¶ 33, 34.) Because of the Defendants' conduct, it is alleged that Plaintiff's creditworthiness has been damaged and that he has suffered emotional distress. (*Id.* ¶¶ 35, 36.)

On August 6, 2020, Carrington filed a motion seeking to dismiss the complaint in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 7.) Along with its motion for dismissal, Carrington filed a request for Judicial Notice. (Doc. No. 7- 2.) Plaintiff filed his opposition to the motion, (Doc. No. 17), and Defendant filed a reply, (Doc. No. 18).

**II.     Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). Ordinarily, for purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). But, even under the liberal pleading standard of Rule 8(a)(2), which requires only that a party make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). "Determining whether a complaint states a plausible claim for relief … [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### III. Judicial Notice

At the motion to dismiss stage a court may consider materials incorporated into the complaint or matters of public record, without converting the motion to dismiss into a motion for summary judgment. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (citation omitted). *See also U.S. v. Ritchie*, 432 F.3d 903, 908 (9th Cir. 2003) ("The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).") The Ninth Circuit has extended the incorporation by reference" doctrine to consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Id.*; *see Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). A court may disregard allegations in a complaint that are contradicted by matters properly subject to judicial notice. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Here, Carrington requested the court take judicial notice of deeds of trust of the Property and several documents from the docket of Plaintiff's Chapter 13 bankruptcy petition, filed in the United States Bankruptcy Court for the Southern District. Specifically, Carrington asks the court take judicial notice of true and correct copies of: (1) Exhibit 1, the Deed of Trust, recorded on May 26, 2011, as document number 2011-0272294 in the Official Records of San Diego County; (2) Exhibit 2, Assignment of Deed of Trust, recorded on May 8, 2014, as document number 2014-0188841 in the Official Records of San Diego County; (3) Exhibit 3, Voluntary Petition for Bankruptcy, Case Number 14- 03122-MM13, filed on April 23, 2014, in the United States Bankruptcy Court for

Southern District of California; (4) Exhibit 4, Original Chapter 13 Plan filed on April 23, 2014 in Case Number 14-03122-MM13; (5) Exhibit 5, the docket of events between April 23, 2014 – February 4, 2020 in Case Number 14-03122-MM13; (6) Exhibit 6, Notice of Modified Chapter 13 Plan Prior to Confirmation, filed on August 29, 2014 in Case Number 14-03122-MM13; (7) Exhibit 7, Application for Compensation and Confirmation of Chapter 13 Plan and Order Theron, filed on November 25, 2013 in Case Number 14- 03122- MM13; (8) Exhibit 8, Notice of Claims Filed and Intention to Pay Claims filed on December 8, 2014 in Case Number 14-03122-MM13; (9) Exhibit 9, Motion for Relief from Automatic Stay filed on April 14, 2015 in Case Number 14-03122-MM13; (10) Exhibit 10, Declaration of Timothy J. Kipling in Opposition to Motion for Relief from Stay filed on April 27, 2014 in Case Number 14-03122-MM13; (11) Exhibit 11, Stipulation re Adequate Protection filed on June 17, 2015 in Case Number 14-03122-MM13; (12) Exhibit 12, Order on Stipulation re Adequate Protection Between Movant Bank of America N.A and Debtors filed on June 26, 2015 in Case Number 14-03122-MM13; (13) Exhibit 13, Transfer of Claim Other Than for Security filed on December 28, 2015 in Case Number 14-03122-MM13; (14) Exhibit 14, Trustee's Notice of Motion with Right to Request Hearing, and Motion to Dismiss filed on September 20, 2016 in Case Number 14- 03122-MM13; (15) Exhibit 15, Post Confirmation Order Modifying Chapter 13 Plan filed on March 31, 2017 in Case Number 14-03122-MM13; (16) Exhibit 16, Trustee's Notice of Motion with Right to Request Hearing and Motion to Dismiss filed on October 15, 2018 in Case Number 14-03122-MM13; (17) Exhibit 17, Declaration of Timothy J. Kipling in Opposition to Trustee's Motion to Dismiss file on November 13, 2018 in Case Number 14-03122-MM13; (18) Exhibit 18, Notice of Final Cure Payment and Completion of Payments Under the Plan filed on November 7, 2019 in Case Number 14-03122-MM13; (19) Exhibit 19, Response to Notice of Final Cure Payment filed on November 27, 2019 in Case Number 14-03122-MM13; and (20) Exhibit 20, Order of Discharge filed on January 15, 2020 in Case Number 14-03122-MM13.

Carrington moves for judicial notice under Federal Rule of Evidence 201, claiming the documents are put at issue by Plaintiff. "Judicial notice under Rule 201 permits a court to take notice of an adjudicative fact, if it is "not subject to reasonable dispute." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). "But a court cannot take judicial notice of disputed facts contained in such public records." *Id.* (citing *Lee v. City of L.A.,* 250 F.3d 668, 689 (9th Cir. 2001)). Plaintiff has not opposed the request.

Accordingly, the court takes judicial notice of Exhibits 1-20 filed in support of the motion to dismiss. (Doc. No. 7-2.) *See, e.g. Intri-Plex Technologies, Inc. v. Crest Grp.*, 499 F.3d 1048, 1052 (9th Cir. 2007) ("a court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute"); *United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, *et al.,* 971 F.2d 244, 248 (9th Cir. 1992) (courts "may take judicial notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") (internal citations omitted); *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 857 n.1 (9th Cir. 2008) ("a paper filed in a case under [the Bankruptcy Code] and the dockets of a bankruptcy court are public records.")  (quoting 11 U.S.C. § 107(a)); *Hendricks v. Wells Fargo Bank, N.A*., No. CV-15-01299-MWF (JEMx), 2015 WL 1644028, at * 1(C.D. Cal. Apr. 14, 2015) (finding it appropriate to take judicial notice of the mortgage note and the dockets for two bankruptcy proceedings initiated by plaintiff in the U.S. Bankruptcy Court for the Central District of California).

**IV. Discussion**

Carrington seeks dismissal of the complaint on failure to state claims grounds and contends that the claims are barred by the doctrines of judicial estoppel and *res judicata*. The court will address each in turn.

**A. Judicial Estoppel and Res Judicata**

Identifying the doctrines of judicial estoppel and res judicata, Carrington argues that Plaintiff's claims fail because: (1) he filed inconsistent pleadings in the bankruptcy action,

upon which he received relief and/or advantage; and (2) he failed to disclose the claim against Carrington to the Bankruptcy Court. (Doc. No. 7-1 at 12-15.) Specifically, Carrington contends Plaintiff is precluded from bringing this action because it relates to the period of April 2014 through January 2020 while Plaintiff's bankruptcy petition was pending, Plaintiff had notice from Bank of America that he was in default on his post-bankruptcy petition mortgage payments, (*see* Doc No. 7-2 at 122-153, 192-196), and Plaintiff never notified the Bankruptcy Court of his potential claims against Carrington or that Carrington was wrongfully reporting his default. (Doc. No. 7-1. at 14.) Second, Carrington maintains that the concessions Plaintiff made in the bankruptcy action have been directly contradicted by the statements in the complaint. (*Id.*) In support, Carrington points to the two declarations Plaintiff filed wherein he conceded that he missed some of his mortgage payments.[1] Plaintiff counters that all the violations in the complaint did not start until after his bankruptcy was discharged and are, therefore, not barred. (Doc. No. 17 at 8-10.)

Judicial estoppel is an equitable doctrine, the purpose of which "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-750 (2001) (citation and internal quotation marks omitted). "In the bankruptcy context, the federal courts have developed a basic default rule: If a plaintiff-debtor omits a pending (or soon-to-be-filed) lawsuit from the bankruptcy schedules and obtains a discharge (or

---

[1] *See* Doc. No. 7-2, Exhibit 10, ¶ 5, April 27, 2015 declaration: "While we acknowledge that we have missed some of our mortgage payments during my unemployment, my wife and I do not believe that we have missed six payments;" and Doc. No. 7-2, Exhibit 17, ¶ 4, November 13, 2018 declaration: "We fell behind because I got laid off from my job. I have gotten re-employed, but it is for substantially less amount that what I was earning before, and we are behind with everything at this point. We are discussing all our options with our attorney, from obtaining a lump sum to timely pay the case, or refiling."

plan confirmation), judicial estoppel bars the action." *Ah Quin v. Cnty. of Kauai Dep't of Transp.*, 733 F.3d 267, 271 (9th Cir. 2013).

Three factors may be examined by courts in determining whether to apply the doctrine of judicial estoppel: (1) whether the party's later position was inconsistent with its initial position; (2) whether the party successfully persuaded the court to accept its earlier position so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled; and (3) whether the party would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped from asserting the inconsistent position. *New Hampshire*, 532 U.S at 750-51.

"Judicial estoppel will be imposed when the debtor has knowledge of enough facts to know that a potential cause of action exists during the pendency of the bankruptcy, but fails to amend his schedules or disclosure statements to identify the cause of action as a contingent asset." *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 784 (9th Cir. 2001). "[T]he duty of the bankruptcy petitioner to disclose the existence of a potential claim is not a formalistic duty predicated on the procedural status of a claim, but is a duty of candor that accrues from the time the facts that give rise to the potential claim are known." *Rose v. Beverly Health and Rehab. Services, Inc.*, 356 B.R. 18, 25 (E.D. Cal. 2006).

After weighing the *New Hampshire* factors, the Court finds that Plaintiff is judicially estopped from bringing his Rosenthal Act, FCRA & CCRAA claims. First, the court finds that Plaintiff asserted inconsistent positions between his bankruptcy and the instant action. *See New Hampshire*, 532 U.S. at -51. According to the allegations in the complaint, the events underlying this litigation relate to alleged missed mortgage payments from June 2019. (Compl. ¶¶ 17-18.) Plaintiff's position that he could not list this lawsuit in his Chapter 13 petition because the claims against Carrington did not exist until post-bankruptcy, (*see* Doc. No. 17 at 8-9), is not persuasive. The Rosenthal Act, FCRA and CCRAA claims at issue here, all stem from the alleged missed mortgage payments that

Kipling had notice of before his bankruptcy was discharged on January 15, 2020, (*see* Doc. No. 7-2, Exhibit 20).  On November 7, 2019, the Chapter 13 trustee filed a Notice of Final Cure Payments regarding Plaintiff's monthly mortgage payments stating that the amount required to cure the default[2] had been paid in full and Debtors had completed all payments under the confirmed Chapter 13 Plan.  (Doc. No. 7-2, Exhibit 18.)  Consistent with Federal Bankruptcy Rules, Carrington's agent, filed a Response to [Trustee's] Notice of Final Cure Payment for creditor Bank of America, the purpose of which was to indicate whether Plaintiff(debtor) had paid in full the amount required to cure the prepetition default and if he was otherwise current on all payments on November 27, 2019.  (*Id.*, Exhibit 19.)  The Response indicates Plaintiff was not current on his post-petition payments, with nine payments, totally $22,855.92, owed, the first of which became due on March 1, 2019.  (*Id.* at 192.)  The "post suspense short fall balance" report, (*see* Doc. No. 7-2, Exhibit 19 at 4- 5), submitted with the Response, provides a breakdown of the purported missed mortgage payments, and includes the June 2019 and August 2019 payments Plaintiff concedes in the complaint he did not pay.  Plaintiff did not object to the Response filed, (*see id.*, Exhibit 5) and on January 15, 2020 the Bankruptcy Court entered its discharge order, (*id.* at Exhibit 20).  This means that Plaintiff was aware of the potentially incorrect past due payments during the duration of his bankruptcy proceedings.  Furthermore, the declaration filed in his bankruptcy petition illustrates his knowledge of his entitlement to ask for a full accounting of the post-petition payments received, (*see, e.g., id.*, at Exhibit 10, ¶ 6). Yet, Plaintiff did not amend his bankruptcy schedules to reflect these potential claims, despite being required to do so, and notwithstanding the fact that they list Bank of America, N.A.[3] as a secured creditor.  Thus, the court finds that Plaintiff has taken

---

[2] The Trustee paid $5,356.06 in principal and $1,013.53 in interest.  (Doc. No. 7-2 at 189.)

[3] Bank of America, N.A., transferred its claim to Carrington Mortgage Services and filed a Transfer of Claim Other than for Security with the Bankruptcy Court on December 22, 2015.  (Doc. No. 7-2, Exhibit 13.)

inconsistent positions. *See Hamilton,* 270 F.3d at 784 (finding that the plaintiff "clearly asserted inconsistent positions" when "[h]e failed to list his claims against [the defendant] as an asset on his bankruptcy schedules, and then later sued [the defendant] on the same claims").

The second *New Hampshire* factor has been met because the court, "accepted" Plaintiff's positions in the schedules submitted, did not dismiss the action or grant Bank of America relief from the stay, gave Plaintiff time to cure the default on the deed of trust and plan payments after Plaintiff conceded he was in arrears, and ultimately discharged his debt in the bankruptcy. *See New Hampshire*, 532 U.S. at 750-51. *See also* Doc. No.7-2, Exhibit 3. By discharging the debt of Kipling, the bankruptcy court accepted Plaintiff's initial position that a pending or potential claim against Carrington, and the CRAs, did not exist.

Third, the court finds that Plaintiff derived an unfair advantage by failing to disclose his claims against Defendants while having some of his debts, including those against Bank of America discharged. *See New Hampshire*, 532 U.S. at 750-51; *see also Ah Quin,* 733 F.3d at 271 (plaintiff-debtors obtain an unfair advantage when a bankruptcy court grants a "discharge or plan confirmation without allowing the creditors to learn of the pending lawsuit."). This failure to disclose gave Plaintiff an unfair advantage by keeping potential proceeds from the Rosenthal Act, FCRA and CCRAA claims from Kipling's creditors. *See New Hampshire* at 750. Further, Kipling benefitted from not disclosing his potential claim against Carrington, because the bankruptcy court discharged Kipling's debt. In asserting a cause of action based on a position inconsistent with the one taken in the bankruptcy proceeding, Kipling is attempting to derive an unfair advantage.

In *New Hampshire*, the Supreme Court recognized that "it may be appropriate to resist application of judicial estoppel when a party's prior position was based on inadvertence or mistake." *Id.* at 753. But, when "a plaintiff-debtor has not reopened bankruptcy proceedings, a narrow exception for good faith" is appropriate. *Ah Quin*, 733 F.3d at 272. Under this narrow exception, the Ninth Circuit has found that it "makes sense to apply a presumption of deliberate manipulation." *Id.* at 273 (citing *Eastman v.*

*Union Pac. R.R. Co.*, 493 F.3d 1151, 1159 (10th Cir. 2007) ("That he well knew of his pending lawsuit and simply did not disclose it to the bankruptcy court is the only reasonable inference to be drawn from the evidence")).[4] Applying, the presumption of deliberate manipulation as required, the court determines that Plaintiff is unable to overcome it. Plaintiff was on notice of his potential claims regarding the missed mortgage payments, failed to disclose the potential claims, and, therefore, deceived the bankruptcy court and undermined the integrity of the bankruptcy process. Consequently, the court determines that Plaintiff has failed to overcome the presumption of deliberate manipulation.

Thus, having weighed the relevant *Hamilton* factors, the court concludes that Plaintiff is judicially estopped from pursuing the Rosenthal Act, FCRA, and CCRAA claims. Because Kipling did not disclose those claims during his bankruptcy proceedings, he may not proceed on those claims now. *See Ah Quin*, 733 F.3d at 271; *Hamilton*, 270 F.3d at 784; *see also Monje v. Spin Master Inc.*, 679 Fed. Appx. 535, 537 (9th Cir. 2017) ("A party is judicially estopped from asserting a cause of action that was not disclosed in a previous bankruptcy proceeding.").

**II. Failure to State a Claim**

**B. RESPA Claim.**

With respect to the RESPA claim, the court finds the information provided by Carrington is insufficient to determine whether Kipling is currently taking an inconsistent position from his earlier bankruptcy action. Accordingly, the court will address

---

[4] In *Ah Quin*, the Ninth Circuit held that a "key factor is that Plaintiff reopened her bankruptcy proceedings and filed amended bankruptcy schedules that properly listed this claim as an asset." *Ah Quin*, 733 F.3d. at 272. The Court of Appeals explained that where "the plaintiff-debtor reopens bankruptcy proceedings, corrects her initial error, and allows the bankruptcy court to re-process the bankruptcy with the full and correct information, a *presumption* of deceit no longer comports with New Hampshire." Plaintiff can make no such claim here. Therefore, this court finds insufficient evidence of inadvertence or mistake.

Defendant's argument that, even if Plaintiff's RESPA claim is not judicially estopped, Plaintiff has failed to allege facts sufficient to state a claim.

To successfully bring a RESPA violation claim a plaintiff must allege: (1) the servicer failed to adhere to the rules governing a qualified written request and (2) the plaintiff incurred actual damages as a consequence of the servicer's failure. *See* 12 U.S.C. § 2605; *see also Ghuman v. Wells Fargo Bank, N.A.*, 989 F. Supp. 2d 994, 1005 (E.D. Cal. 2013).

The Act provides that, upon receiving a QWT from a borrower, a loan servicer must send notice of receipt of said request and take certain actions within a prescribed amount of time. *See* 12 U.S.C. §§ 2605(e)(1)(A) and (e)(2). To be classified as a QWR, the writing must meet 3 requirements. First, it must request "information relating to the servicing" of the borrower's loan. 12 U.S.C. § 2605(e)(1)(A). RESPA defines "servicing" as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan ... and making the payments of principal and interest ... with respect to the amounts received from the borrower...." 12 U.S.C. § 2605(i)(3). Second, the letter must include sufficient information to allow the loan servicer to identify the borrower's name and account. 12 U.S.C. § 2605(e)(1)(B)(I). Third, the letter must "include[ ] a statement of the reasons for the belief of the borrower ... that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii).

Noticeably absent from the voluminous pages of requests for judicial notice submitted by either party was the letter Plaintiff purportedly sent requesting a QWR. No facts have been alleged establishing that Carrington received the letter, that the letter contained the necessary customer and account detail, that the letter was properly identified as a QWR or that the letter contained sufficient details regarding what the errors were. The only allegation regarding the QWR is Plaintiff's conclusory assertion that he sent Carrington a QWR "on April 27, 2020 requesting information on the Account and to correct the errors it had made." (Compl. at ¶ 27.) But such a general allegation, without

more, comes nowhere close to establishing that the letter sent to Carrington was indeed a QWR, or that it triggered any duty to respond. *See, e.g., Ghuman*, 989 F. Supp. 2d at 1007 ("Plaintiffs' conclusory assertion that Defendant 'violated RESPA ... by its failure to meaningfully respond' is also insufficient" to show that Defendant did not comply with RESPA."); *Zorio v. Experian Info. Solutions, Inc.*, Case No. 5:12–cv–00498–LHK, 2012 WL 4715207, at * 4 (N.D. Cal. Oct. 1, 2012) ("Simply labeling a letter a "Qualified Written Request" does not make it so." To survive a motion to dismiss, Plaintiff would need to allege with greater specificity that he sent a letter meeting the requirements for a QWR.").

Furthermore, even assuming the April 27, 2020 letter was a QWR, the second element of the claim has not been satisfied. Kipling has not established that he incurred actual damages attributable to Carrington's failure to respond. The allegation "Plaintiff seeks actual damages according to proof in addition to statutory damages and attorneys' fees and costs," (Compl. at ¶ 42), without more, is not sufficient. *See, e.g., Ghuman,* 989 F. Supp. 2d at 1006 (a "RESPA claim's failure to allege a pecuniary loss resulting from a failure to respond is fatal to the claim"); *Mekani v. Homecomings Fin., LLC,* 752 F. Supp. 2d 785, 795 (E.D. Cal. 2010) (stating that "Plaintiffs' RESPA claim fails for the additional reason that Plaintiff has alleged no actual damages attributable to Defendant's alleged failure to respond.") (collecting cases).

Accordingly, the court **GRANTS** Defendant Carrington's motion to dismiss the RESPA claim **WITH LEAVE TO AMEND**.

**III**. **Conclusion**

Because the court has determined that Plaintiff's Rosenthal Act, FCRA and CCRAA claims are barred by judicial estoppel, they cannot be fixed by amendment. Although it appears pellucid Plaintiff will be unable to plead any claims given the bankruptcy proceedings and the doctrine of judicial estoppel, given the early pleading stage, the court will accede to Plaintiff's request and grant him leave to amend. *See Lopez v. Smith,* 203 F.3d 1122, 1127 (9th Cir. 2000) (leave to amend should be granted unless the claim "could not possibly be cured by the allegation of other facts."). Plaintiff is, however, on

1  notice, that no further amendments will be entertained.  Accordingly, the court **GRANTS**
2  Defendant Carrington's motion to dismiss with leave to amend.  (Doc. No. 7.)  Plaintiff
3  has up to an including *February 12, 2021*, to file an amended complaint.
4      IT IS SO ORDERED.
5  Dated:  January 25, 2021

Hon. Jeffrey T. Miller
United States District Judge